**Louis STUART, Vivian Stuart and**
**Rachel Stuart, Appellants,**

v.

**UNITED STATES of America and Alson**
**E. Lancaster, Special Agent, Etc.,**
**Appellees.**

No. 27093.

United States Court of Appeals
Fifth Circuit.

Sept. 17, 1969.

Rehearing Denied Oct. 28, 1969.

Adam G. Adams, II, William R. Frazier, Jacksonville, Fla., for appellants; Adams & Adams, Jacksonville, Fla., of counsel.

Edward F. Boardman, U. S. Atty., Tampa, Fla., Allan P. Clark, Asst. U. S. Atty., Jacksonville, Fla., Richard M. Roberts, Mitchell Rogovin, Johnnie M. Walters, Asst. Attys. Gen., Joseph H. Howard, John P. Burke, Lee A. Jackson, Attys., Tax Division, Dept. of Justice, Washington, D. C., for appellees; Virginia Q. Beverly, Asst. U. S. Atty., of counsel.

Before WISDOM and MORGAN, Circuit Judges, and DAVIS,* Judge of the U. S. Court of Claims.

DAVIS, Judge:

A summons, comparable to a subpoena duces tecum, was issued by the Internal Revenue Service, compelling appellant-taxpayers' accountant, John B. Blois, to produce certain of their records in his possession. Blois resisted and the Service petitioned the court below for enforcement. Appellants were granted leave to intervene, under Rule 24(a) of the Federal Rules of Civil Procedure ("Intervention of Right"). From the order of the District Court enforcing the summons, they appeal.

In February 1968, Revenue Agent Alma Vaughn was assigned by the Service to conduct a civil investigation of taxpayers' returns for 1966, and, eventually, 1964–1967. Upon beginning her study, she asked their attorney to make available their tax records for those years. Since taxpayer Vivian Stuart, who kept the records at a place of business known as the Georgia Package Store, worked nights and slept days, the records were placed, for Agent Vaughn's convenience, with Mr. Blois, the accountant at whose office she could more feasibly conduct her investigation. Mrs. Vaughn spent some nine days, over a

---

* Sitting by designation.

period of four months, at Blois' office and at the home of his mother, where the records were sometimes transferred. Agent Vaughn's request for an extension of the time for examination was granted by the appellants.

During her inquiry, this agent discovered possible indications of fraud, and so notified the Service. No mention of these findings was made to appellants. On June 10, 1968, Special Agent Lancaster was assigned to carry on the investigation of the tax records. On June 14th, he presented himself to Vivian Stuart, told her he was an "intelligence officer" of the IRS, and that he was conducting an investigation of her tax records. He then gave her the following warning:

> "It is my duty to advise you of your constitutional rights. You have a right to remain silent. Anything you say can be used against you in a court, or other proceedings. You have the right to consult with an attorney before making any statement, or answering any question, and you may have him present with you during the questioning. You may have an attorney appointed by the U. S. Commissioner or a court to represent you if you cannot afford it, or otherwise obtain one.
>
> "If you decide to answer any question now, with or without a lawyer, you have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting a lawyer.
>
> "However, you may waive the right to the advice of counsel, and you have a right to remain silent; and you may answer questions, or make a statement without consulting a lawyer if you so desire." [1]

A similar caution was given to Louis Stuart the same day and to Rachel Stuart on June 17th. On June 14th, Agent Lancaster served a summons upon Blois, ordering production of the taxpayers' records, under Section 7602 of the Internal Revenue Code ("Examination of books and witnesses"). Blois was notified that a criminal investigation was being undertaken against the appellants. He appeared on the return date, but refused to comply, alleging he had returned the records to the taxpayers, conditionally, and that they refused to hand them back to him.

The District Court issued a show cause order against Blois, who had regained physical possession of the records pending the order of the District Court. In his answer to the complaint, he admitted possession, but disclaimed any interest, right, or title in or to the records, saying that they were the sole property of the taxpayers, and asking the court to substitute the latter as the real parties in interest.

The Stuarts then sought and received permission to intervene, alleging that they were the sole owners of the records and had placed them with accountant Blois solely at the request and for the convenience of Revenue Agent Vaughn. They also asserted that upon the institution of a criminal investigation they acquired the right to withhold the records from the IRS under the privilege against self-incrimination of the Fifth Amendment, and that they invoked that right.

The District Court ordered enforcement of the summons (under 26 U.S.C. §§ 7402 and 7604), holding that any constitutional rights claimed by the taxpayers should be raised as objections, at trial, to the admission of evidence gained from the production of the records. The court observed:

> "As the case stands, it remains a civil investigation against which Fourth and Fifth Amendment objections may not be raised. * * * Respondents-Intervenors may raise their constitutional objections to admission of evidence at trial should a criminal prosecution eventuate."

A stay was granted, pending taxpayers' appeal.

---

[1]. The warning was given under the directive of IRS News Release IR–949, 11/26/68, 1968, CCH ¶ 6946.

The case before us has been narrowed by the Government's concession, in oral argument, that, had the papers been in the hands of the taxpayers upon service of the summons, they could have successfully asserted their privilege against self-incrimination, and refused production. This concession accords with the statements of courts (United States v. Cohen, 388 F.2d 464, 472 (C.A.9 1967); United States v. Judson, 322 F.2d 460 (C.A.9 1963); United States v. Kleckner, 273 F.Supp. 251 (S.D.Ohio) appeal dismissed 382 F.2d 1022 (C.A.6 1967); see Boyd v. United States, 116 U.S. 616, 631–632, 6 S.Ct. 524, 29 L.Ed. 746 (1886)), as well as with what appears to be the current position of the Department of Justice. See Glotzbach v. Klavans, 62–2 U.S.T.C. ¶ 15,452 (C.A.4 1962); United States v. Kleckner, *supra*.[2]

It is plain, too, that the inquiry into taxpayers' records was no longer solely a civil investigation, but had reached the stage of an investigation into possible criminal violations. Revenue Agent Vaughn had notified the Internal Revenue Service of possible indications of fraud. A special agent, primarily concerned with the criminal aspects, was then assigned. This special agent (Lancaster) succinctly warned taxpayers of their constitutional rights, and informed accountant Blois of the criminal nature of the investigation. This adds up, unmistakably, to an inquiry with dominant criminal overtones.

The only issue, then, is whether the accountant's possession of the taxpayers' materials makes the summons enforceable.[3] In that connection the critical fact, in our view, is that the records were put in the accountant's custody primarily for the convenience of Revenue Agent Vaughn, so that she could work on them during her regular working day and in comfortable quarters. Blois, the accountant, was not to process or use them in any way; he was simply their custodial bailee while Mrs. Vaughn went through them for her own purposes. Unlike Deck v. United States, *supra*, 119 U.S. App.D.C. 240, 339 F.2d 739 (1964), cert. denied, 379 U.S. 967, 85 S.Ct. 660, 13 L.Ed.2d 560, (1966) and Bouschor v. United States, 316 F.2d 451 (C.A.8

---

2. The Government's brief cites Falsone v. United States, 205 F.2d 734 (C.A. 5), cert. denied, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953), for the proposition that a taxpayer is not protected from production of his own records, since he is required to keep such papers (see Shapiro v. United States, 335 U.S. 1, 32, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948)—and then adds that "the Department of Justice has, however, refrained from making that argument in recent years." In any event, *Falsone* was a wholly civil proceeding in which there was no indication, as there is here, that a criminal investigation had begun.

3. Since the substance of the warnings established for criminal cases by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was given to taxpayers, it is academic in this case whether those cautionary statements were required. See, e. g., Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L. Ed.2d 381 (1968); United States v. Wainwright, 284 F.Supp. 129 (D.Colo. 1968); United States v. Jaskiewicz, 278 F.Supp. 525, 529–535 (E.D.Pa.1968);

United States v. Turzynski, 268 F.Supp. 847 (N.D.Ill.1967); United States v. Bachman, 267 F.Supp. 593 (W.D.Pa., 1966); also Kohatsu v. United States, 351 F.2d 898 (C.A.9 1965), cert. denied, 384 U.S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017 (1966).

There is also no question whether the papers involved are of such a nature as to be protected by a claim of privilege against self-incrimination. They were the appellants' own records, not the accountants' work-product; and they were not corporate documents. See, e. g., Sanford v. United States, 358 F.2d 685 (C.A. 5 1966); Deck v. United States, 119 U.S. App.D.C. 240, 339 F.2d 739 (1964), cert. denied, 379 U.S. 967, 85 S.Ct. 660, 13 L. Ed.2d 560 (1965); In re Fahey, 300 F.2d 333 (C.A.6 1961); United States v. Boccuto, 175 F.Supp. 886 (D.N.J.) appeal dismissed, 274 F.2d 860 (C.A.3 1959); Application of House, 144 F.Supp. 95 (N.D.Cal.1956).

Likewise, it is clear from the record that taxpayers timely raised their claim of privilege against self-incrimination under the Fifth Amendment. The Government does not really contest this point.

1963), these records were neither the work-product of the accountant, nor papers to be used by him. He had no professional concern with them at the time, while the revenue agent did. It was her work and her convenience which were served by the transfer to Blois's office. He was a mere "naked possessor." See Schwimmer v. United States, 232 F.2d 855, 860–861 (C.A.8), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956).

Had the appellants been informed originally that a criminal investigation was in progress, they could have rightfully withheld the records—as the Government admits. See United States v. Cohen, *supra*, 388 F.2d 464; United States v. Kleckner, *supra*, 273 F.Supp. 251. Or if they had retained custody of the documents and required Agent Vaughn (pursuing her civil inquiry) to do her work under adverse conditions at the Georgia Package Store (where the records were kept), they could have properly resisted production to Special Agent Lancaster when he began his criminal investigation. It should make no difference in this result that custody was changed in order to benefit the Government's employee (Agent Vaughn) and to facilitate her work. The Government should not gain an advantage because the taxpayers, acting reasonably as human beings and citizens, did it a favor and failed to insist that Mrs. Vaughn perform her inspection in uncomfortable circumstances and at off-hours. To penalize appellants for their good-will would not only be unjust; it would hurt the Government in the long-run by encouraging taxpayers to keep close personal custody of their records no matter what the burden on the inspecting revenue agent.[4]

The Government errs in thinking that it is wholly irrelevant how the records came into the accountant's hands.

That is not the rule of Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921), in which the Supreme Court held that a defendant could not employ the privilege against self-incrimination to prevent use of his private papers, stolen by a third party who voluntarily relinquished them to the Justice Department. In *Burdeau*, the Court based its decision on the factual conclusion by the trial court that the Government "clearly * * * had [nothing] to do with the wrongful seizure of the petitioner's property * * * *" 256 U.S. at 475, 41 S.Ct. at 576. Since the Government's possession of the documents resulted entirely from the voluntary acts of a third party, without participation by the Government, the Court concluded that the Fifth Amendment was unavailable to the non-possessing owners. In the present case, on the other hand, the taxpayers delivered the records to the third party for the convenience and benefit of the IRS. The Government thus had a significant role in the transfer and can be held to the consequences of its participation.

This circuit's decisions in Venn v. United States, 400 F.2d 207 (C.A.5 1968), and Sanford v. United States, 358 F.2d 685 (C.A.5 1966), do not require enforcement of the summons. *Venn* involved a self-incrimination claim by a third-party possessor who feared the taxpayer's papers would be used against him in an unrelated criminal suit. The Court determined that the Service was entitled to production of those specific items for which it could show a requisite need outweighing any possible burden on the taxpayer. 400 F.2d at 211. Here, the taxpayers seek protection of their own records in the course of a criminal tax investigation directed at them. In *Sanford*, the records were those of a corporation, for which the law does not recognize the privilege

---

4. For similar reasons, it cannot be said that appellants waived their privilege by "voluntarily" handing over the papers to the agent conducting the civil investigation. *Cf.* Kohatsu v. United States, 351 F.2d 898 (C.A.9 1965), cert. denied, 384

U.S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017 (1966); United States v. Sclafani, 265 F.2d 408 (C.A.2), cert. denied, 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959); United States v. Turzynski, 268 F.Supp. 847, 850, 852 (N.D.Ill.1967).

against self-incrimination, even when raised by an officer who might be injured by the corporate books and records in his possession. Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); In re Grant, 198 F. 708 (S.D.N.Y.1912), aff'd 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913).

For these reasons, the order compelling enforcement of the summons is

Reversed.