UNITED STATES of America,
Plaintiff-Appellee,

v.

Marvin D. BLAND, Defendant-Appellant.

No. 71-1407.

United States Court of Appeals,
Fifth Circuit.

April 5, 1972.

**2**

Morris Harrell, Stan McMurry, Rain, Harrell, Emery, Young & Doke, Dallas, Tex., for defendant-appellant.

Eldon B. Mahon, U. S. Atty., Kenneth J. Mighell, Asst. U. S. Atty., Dallas, Tex., John P. Burke, Joseph H. Reiter, Attys., Dept. of Justice, Tax Div., Washington, D. C., Johnnie M. Walters, Asst. Atty. Gen., Crombie J. D. Garrett, Atty., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee; Eldon B. Mahon, U. S. Atty., Kenneth J. Mighell, Asst. U. S. Atty., of counsel.

Before TUTTLE, INGRAHAM and RONEY, Circuit Judges.

INGRAHAM, Circuit Judge.

This is an appeal from a conviction of tax evasion in violation of 26 U.S.C. § 7201. Appellant Bland was a manufacturer's representative for World Carpet Mills of Dalton, Georgia. Appellant was charged with the substantive offense of tax evasion for the years 1962 through 1964, inclusive. While appellant does not seriously dispute that over $58,000 in taxes are due and owing to the United States, he volubly disputes the presence of any intent to evade taxes.

On appeal appellant's case rises or falls on two issues raised by preliminary motions and preserved for appeal.

## I.

## A TIME-BARRED PROSECUTION

A complaint concerning calendar years 1962 through 1964 was filed on April 10, 1969, only five days before the six year statute of limitations in fraud cases, 26 U.S.C. § 6531, expired on his 1962 tax return.[1] The filing of the complaint triggered the proviso of § 6531 and permitted the Government to bring its case before a grand jury after April 15, 1969.[2]

The appellant's case was taken before a grand jury on June 2, 1969. The grand jury, however, declined to indict Bland and returned a "no-bill." Subsequently, after the initial grand jury was discharged in due course, the Government brought appellant's case before the succeeding grand jury. This grand jury returned a three count indictment on September 18, 1969.

As the indictment was returned more than six years after April 15, 1963, the date on which appellant filed his 1962 tax return, it is barred by the statute of limitations, 26 U.S.C. § 6531, unless saved by the proviso:

"\* \* \* \* Where a complaint is instituted before a commissioner of the United States within the period above limited, the time shall be extended until the date which is 9 months after the date of the making of the complaint before the commissioner of the United States. For the purpose of determining the periods of limitation on criminal prosecutions, the rules of section 6513 shall be applicable."

Appellant, unlike others who have previously asserted limitations against their prosecutions under § 6531, see, e. g., Jaben v. United States, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965); United States v. Meriwether, 440 F.2d 753 (5th Cir., 1971), does not contest the sufficiency of the complaint and accompanying procedures which triggered the nine-month proviso. Rather appellant asserts that the extension granted by the proviso expired when the first grand jury presented with the complaint elected not to indict. He argues that the

1. "No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue law unless the indictment is found or the information instituted within 3 years next after the commission of the offense, except that the period of limitation shall be 6 years—

   (1) for offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner;

   (2) for the offense of willfully attempting in any manner to evade or defeat any tax or the payment thereof;

   (3) for the offense of willfully aiding or assisting in, or procuring, counseling, or advising, the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a false or fraudulent return, affidavit, claim, or document (whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document);

   (4) for the offense of willfully failing to pay any tax, or make any return (other than a return required under authority of part III of subchapter A of chapter 61) at the time or times required by law or regulations;

   (5) for offenses described in sections 7206(1) and 7207 (relating to false statements and fraudulent documents);

   (6) for the offense described in section 7212(a) (relating to intimidation of officers and employees of the United States);

   (7) for offenses described in section 7214(a) committed by officers and employees of the United States; and

   (8) for offenses arising under section 371 of Title 18 of the United States Code, where the object of the conspiracy is to attempt in any manner to evade or defeat any tax or the payment thereof."

2. "Where a complaint is instituted before a commissioner of the United States within the period above limited, the time shall be extended until the date which is 9 months after the date of the making of the complaint before the commissioner of the United States. For the purpose of determining the periods of limitation on criminal prosecutions, the rules of section 6513 shall be applicable."

grand jury's "no-bill" was the equivalent of a dismissal of the complaint and vitiated the time extension. The Government, however, contends that the extension is absolute upon the filing of a valid complaint. In its view the succeeding grand jury was not bound by its predecessor's decision not to indict. See United States v. Thompson, 251 U.S. 407, 40 S.Ct. 289, 64 L.Ed. 333 (1920).

A consideration of these arguments requires our examination of the proviso and its place in the statutory scheme. § 6531 is a general three year statute of limitations. An exception to the three year period is made in certain classes of cases, including fraud and willful tax evasion. The period of limitations for such cases is six years. The proviso we speak of is that in the event the Government has filed a complaint within the applicable period of limitations, the period of limitations is extended until a date which is nine months after the date the complaint was made.

A literal reading of the statute and proviso as the Government urges would make the applicable period of limitations in this case six years and nine months less five days. See United States v. Grayson, 416 F.2d 1073 (5th Cir., 1969).

We are, however, unconcerned with the terminal date of the proviso extension. We are concerned with whether the refusal to indict by the grand jury in session at the time the complaint was filed cuts off further extension of the applicable period of limitations. In Jaben v. United States, *supra,* the Supreme Court articulated the purpose of the § 6531 proviso. The Court there stated:

"More basically, the evident statutory purpose of the nine-month extension provision is to afford the Government an opportunity to indict criminal tax offenders in the event that a grand jury is not in session at the end of the normal limitation period. This is confirmed by the immediate precursor of the present section which provided for an extension 'until the discharge of the grand jury at its next session within the district.' I.R.C. 1939, § 3748(a). Clearly the statute was not meant to grant the Government greater time in which to make its case (a result which could have been accomplished simply by making the normal period of limitations six years and nine months), but rather was intended to deal with the situation in which the Government has its case made within the normal limitations period but cannot obtain an indictment because of the grand jury schedule. The Government's interpretation does not reflect this statutory intention, for it provides no safeguard whatever to prevent the Government from filing a complaint at a time when it does not have its case made, and then using the nine-month period to make it.

"The better view of § 6531 is that the complaint, to initiate the time extension, must be adequate to begin effectively the criminal process prescribed by the Federal Criminal Rules. It must be sufficient to justify the next steps in the process—those of notifying the defendant and bringing him before the Commissioner for a preliminary hearing. To do so the complaint must satisfy the probable cause requirement of Rule 4. Furthermore, we think that the Government must proceed through the further steps of the complaint procedure by affording the defendant a preliminary hearing as required by Rule 5, unless before the preliminary hearing is held, the grand jury supersedes the complaint procedure by returning an indictment. This interpretation of the statute reflects its purpose by insuring that within a reasonable time following the filing of the complaint, either the Commissioner will decide whether there is sufficient cause to bind the defendant over for grand jury action, or the grand jury itself will have decided whether or not to indict. A dismissal of the complaint before the indictment is returned would vitiate the time extension."

In addition to the Supreme Court's formulation of the purpose and effect of the § 6531 proviso, two other considerations are urged which it is asserted compel a decision in favor of appellant. First, this is not a case in which the Government needed the entire six years from the filing of appellant's return to build its case against him. The prosecution in argument before the district court conceded that its case was completed by the end of February of 1966. The election to defer filing of a complaint or obtaining an indictment until five days before the period of limitations expired on the 1962 count was and remains unexplained.

The delay incident in this case leads to the second consideration; that is, whether the appellant's right to a fair and speedy trial has been violated. Recently the Supreme Court in United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), adopted the view of this and several other circuits and held in the usual case [3] that the protection of the Sixth Amendment was inapplicable to the period prior to arrest.[4]

The delay which most often occurs, as in the case at bar, is from the commission of the alleged offense (here on April 15, 1963, when the return was filed) until the indictment is returned. The Supreme Court noted, however, that the individual is not left remediless for excessive pre-arrest delay.

"The law has provided other mechanisms to guard against possible as distinguished from actual prejudice resulting from the passage of time between crime and arrest or charge. As we said in United States v. Ewell *supra*, 386 U.S. 116, at 122, 86 S.Ct. [773], at 777, [15 L.Ed.2d 627] 'the applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges.' Such statutes represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice; they 'are made for the respose (sic) of society and the protection of those who may [during the limitation] . . . have lost their means of defense.' Public Schools v. Walker, 76 U.S. (9 Wall.) 282, 288, 19 L.Ed. 576 (1869). These statutes provide predictability by specifying a limit beyond which there is an irrebuttable assumption that a defendant's right to a fair trial would be prejudiced."

■■ But, as the Supreme Court in its *Marion* opinion also points out, it is Congress which, in the first instance, must establish what is a facially reasonable time for the bringing of prosecutions. Even the liberal policy in favor of repose, United States v. Marion, *supra*; United States v. Habig, 390 U.S. 222, 227, 88 S.Ct. 926, 19 L.Ed.2d 1055 (1967), can not overcome the plain meaning of an unambiguous statute. The extension provided by the Congress in the proviso to § 6531 is by its terms abso-

---

3. United States v. Judice and Merritt, 457 F.2d 414 (5th Cir., 1972).

4. In *Marion*, the Supreme Court explicitly held:
   " * * * So viewed, it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engages the particular protections of speedy-trial provision of the Sixth Amendment.
   "*Invocation of the speedy-trial provision thus need not await indictment, information or other formal charge. But we decline to extend the reach of the amendment to the period prior to arrest.*

   Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation; his situation does not compare with that of a defendant who has been arrested and held to answer. Passage of time, whether before or after arrest, may impair memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise interfere with his ability to defend himself. But this possibility of prejudice at trial is not itself sufficient reason to wrench the Sixth Amendment from its proper context. Possible prejudice is inherent in any delay, however short; it may also weaken the Government's case." (Italics added).

lute. A sufficient complaint having been filed during the prime period of the statute, the government is entitled to make its presentation to the grand jury or juries, should the need arise, until the expiration of a time nine months from the filing of the complaint with the commissioner. The return of a "no-bill" does not alter this result. Compare United States v. Ponder, *infra*, 444 F.2d 816 at 822; Mende v. United States, 282 F.2d 881 (9th Cir., 1960). We conclude as did the district court that the prosecution under Count I of the indictment was not time-barred.

Notwithstanding the appeal of the concurrent sentence doctrine, appellant's contentions of governmental overbearing *in obtaining relevant information and materials* require that we consider his second argument.

## II.

### MOTION TO SUPPRESS

By motion to suppress and by motion for judgment of acquittal at the close of the case, appellant has raised the issue of whether statements and information obtained after November 3, 1965, when a Special Agent of the Intelligence Division[5] first contacted Bland, were admissible into evidence.

The district court initially granted appellant's motion to suppress, but on rehearing, and after the question of whether the Revenue Agent could testify to what he had observed before the Special Agent entered the case had been briefed, the district court reversed itself and denied the motion. By motion, after a verdict had been returned against him, appellant adequately preserved this point for appeal.

On November 3, 1965, the Special Agent assigned Bland's case accompanied the Revenue Agent to the office of Bland's accountant. The Revenue Agent, without introducing the Special Agent

as such, requested the accountant to release Bland's original records which the Revenue Agent had previously audited in the accountant's offices. Bland's accountant refused to permit the agent to remove the records without either Bland's consent or an investigative summons. Having thus been refused, both agents left the accountant and went to the carpet company's Dallas warehouse to examine that corporation's records. While there the agents met appellant returning from a business trip. The Revenue Agent introduced the Special Agent to appellant as another man with the Government. The Special Agent neither identified himself nor gave the reason for his presence. At the Special Agent's request Bland called his accountant who released the original records.

Appellant argues that the records should not be allowed into evidence. He asserts that the presence of the Special Agent signaled that the inquiry into his tax returns had become criminal and that he was entitled to the full protection of the guidelines of the Internal Revenue Service then in force. Appellant does not argue that the Special Agent on November 3, 1965, was required to give a series of *Miranda* warnings. Realizing such argument's futility, United States v. Ponder, 444 F.2d 816 (5th Cir., 1971); United States v. Tonahill, 430 F.2d 1042 (5th Cir., 1970); United States v. Prudden, 424 F.2d 1021 (5th Cir., 1970), he asserts that the Special Agent's failure to identify himself or the changed status of the investigation constituted a fraud, deceit or trickery and invalidated the consent to agency possession of his records. Appellant places heavy reliance upon the following statements from United States v. Prudden and United States v. Tonahill, *supra:*

"Prudden points to the failure of Special Agent Cohen to tell him that his function was to investigate for criminal fraud. All Cohen was re-

---

**5.** A word of background. The Intelligence Division of the Internal Revenue Service accepts cases referred to it by Revenue Agents conducting routine audits of tax

returns. The Intelligence Division's function is to investigate these referred "fraud" cases, with a view towards initiating criminal proceedings.

quired to do by the then existing Internal Revenue Service requirements was to tell Prudden that he was a Special Agent and show Prudden his credentials. This he did. He in no way concealed his true identity. He could not have affirmatively misled Prudden as to the function of the Intelligence Division or as to the duties of a special agent, since neither of these subjects were ever discussed. Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading. None of these facts were present here." 424 F.2d 1032.

"Of course, there is no question, as *Prudden* pointed out, that Revenue Agents cannot obtain information from taxpayers by fraud, trickery or deceit which misrepresents the nature of the search. But there must be 'acts by the agent[s] which *materially* misrepresent the nature of the inquiry' before there is fraud, trickery or deceit and 'the record * * * must disclose some affirmative misrepresentation to establish the existence of fraud, and *this showing must be clear and convincing.' Prudden* at p. 1033 (emphasis added)." 430 F.2d 1044–1045.

Appellant asserts and the record demonstrates that the Special Agent did not inform Bland that he was with the Intelligence Division. Further, neither Bland nor his accountant were apprised of the shift in emphasis from civil to criminal consequences.

While the mere presence of a special agent has no independent relevance in determining whether a particular examination and audit is directed towards civil or criminal consequences, Donaldson v. United States, 400 U.S. 517, at 535, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the record at bar clearly demonstrates that before November 3, 1965, the Special Agent was contemplating criminal consequences. The record, however, also demonstrates that the Revenue Agent had full access to the particular records obtained for several months before November 3, 1965, and may have photocopied them at that time. The Special Agent desired the originals in his office to assist in preparing the case against appellant. Under these circumstances, had the Special Agent sought judicial enforcement proceedings of a summons issued to compel the accountant to produce the records, enforcement would have been denied. See United States v. Newman, 441 F.2d 165 (5th Cir., 1971); United States v. Mercurio, 418 F.2d 1213 (5th Cir., 1969), aff'd sub nom., United ed States v. Donaldson, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); Stuart v. United States, 416 F.2d 459 (5th Cir., 1969). Appellant, however, consented to the release of the original records. Unless that consent was involuntary, the records were properly admissible. United States v. Ponder, *supra.*

In Prudden v. United States, *supra,* we held:

"We conclude that the mere failure of a revenue agent (be he regular or special) to warn the taxpayer that the investigation may result in criminal charges, *absent any acts by the agent which materially misrepresent the nature of the inquiry,* do not constitute fraud, deceit and trickery. Therefore, the record here must disclose some affirmative misrepresentation to establish the existence of fraud, and this showing must be clear and convincing." (Emphasis added.)

Appellant asserts that his case falls within the rule enunciated by *Prudden* inasmuch as the Special Agent was under a duty[6] to disclose his identity and

---

6. The Internal Revenue Service guidelines for special agents then in force:
   "MT 9900–12 (7–30–65) IR Manual stated as follows:
   242.13. *Duty to Inform Taxpayer of His Rights*

(1) It is not essential to the admissibility of a defendant's testimony that he should first have been informed that what he said might be used against him in a criminal case, provided his statement was freely and un-

that his silence was a material misrepresentation of the nature of the inquiry.

■■ While we might be willing to accept that the Special Agent's silence, in circumstances where the Internal Revenue Service had imposed a duty upon him to speak, was a misrepresentation, *Prudden, supra,* 424 F.2d 1032 at n. 21; United States v. Leahey, 434 F.2d 7 (1st Cir., 1970); United States v. Heffner, 420 F.2d 809 (4th Cir., 1970), we are unable to find an indication of its materiality. It is hornbook law that for a misrepresentation to have legal effect, it must have been material. The Government may not use fraud, deceit or trickery to obtain information by consent, but one who would assert these grounds to vitiate the consent under *Prudden* must be able to demonstrate that the asserted misconduct has affirmatively misled him, United States v. Stribling, 437 F.2d 765 (6th Cir., 1971); United States v. Sclafani, 265 F.2d 408 (2nd Cir., 1959), or demonstrate from the totality of the circumstances that his statements were involuntary. United States v. Willoz, 449 F.2d 1321 (5th Cir. 1971); United States v. Montos, 421 F.2d 215 (5th Cir., 1970). The record here demonstrates that appellant was not misled by the Special Agent's silence for, as he testified, he did not know the difference between a special agent and a revenue agent. (See Motion, Tr. 81–82) Further, although we are only speculating about the existence of photocopies made by the Revenue Agent, the Revenue Agent could testify to authenticate the copies of the records he had audited prior to the entry of the Special Agent.

Certainly he could testify from his own recollection. See Weaver v. United States, 374 F.2d 878 (5th Cir., 1967).

We conclude that the original records were properly admitted into evidence.

This, however, does not end appellant's arguments. He asserts a similar argument seeking to exclude statements made by the taxpayer during conferences with the Special Agent on November 9, 1965, November 15, 1965 and February 10, 1966.

■ At the first conference on November 9, 1965, Bland, in the company of his accountant, went to the offices of the Internal Revenue Service. When the accountant observed that the suite of offices were those of the Intelligence Division, he suggested that appellant obtain an attorney. Appellant did not immediately follow his accountant's advice or request termination of this conference. Over the accountant's repeated objections, appellant consented to answer what were described as general questions. At the close of this conference during which the agents learned of Bland's safe deposit box, they requested that appellant accompany them and open the box for inspection. Bland, as in all other matters the agents had requested, complied. Before opening the box Bland explained that the box contained a $10,000 bill. The box was found to contain three $10,000 bills. Appellant argues that evidence of the $30,000 in the safe deposit box should have been suppressed. Appellant's argument, however, is unpersuasive. On November 9, 1965, the appellant was given full knowledge of his rights by the joint admonitions of the accountant and the Special Agent.

derstandingly given. The same rule applies to books and records submitted voluntarily for examination. Neither is the Government obliged to keep a taxpayer informed of the changing course of a tax investigation, but its agents must refrain from trickery, misrepresentation, or deception. The taxpayer is expected to know that anything he offers the Government in a tax investigation may be used in a criminal prosecution, and he cannot later successfully argue that he gave the information only for civil purposes. As stated in the Frank case * * * : " 'Under the statutes the government has authority to examine books, papers, and records, and we do not think any taxpayer considers an audit by a revenue agent to be a call for purely social purposes.' " See also United States v. Prudden, *supra,* at n. 14.

There is no reversible error here. See also United States v. Nemetz, 450 F.2d 924 (3rd Cir., 1971), cert. denied 405 U.S. 988, 92 S.Ct. 1250, 31 L.Ed.2d 454 (3rd Cir., 1972).

After the second conference of November 15, 1965, at which appellant was visibly upset, he approached the Revenue Agent and questioned him as to whether he needed an attorney. The Revenue Agent replied: "Contrary to what you may have heard about the Internal Revenue Service, they would not be so crude as not to inform you in ample time that you should obtain an attorney." This occasion, however, produced neither statement nor evidence [7] and, consequently, there is no error. F.R.Crim.P., 52(a).

The third conference occurred on February 10, 1966, when Bland met with the Special Agent. At that time the Special Agent read Bland all the essential Miranda warnings and asserted that since he had appellant's record from third parties (either the Revenue Agent or Bland's accountant), they were not privileged. Appellant then answered his questions and at trial, after timely objection, the Special Agent testified as to Bland's answers. Appellant asserts that the Special Agent's testimony must be stricken since the assertion made to appellant was false.

However, in light of our previous holding concerning appellant's records,

we find no reason to reach this question.

Appellant's contention concerning the district court's charge to the jury is lacking in merit. After full consideration of Appellant's remaining arguments, a close review fails to demonstrate error rising above the requirements of F.R.Crim.P. Rule 52(a).

The judgment of the district court is affirmed.

---

7. Had evidence from this conference been introduced at appellant's trial, we would face consideration of whether appellant's statements made in circumstances of manifest discomfiture were the equivalent of an in-custody interrogation. If a situation which could be characterized as psychological custody were demonstrated, a defendant's statements made without benefit of the *Miranda* warnings would be inadmissible.
See Miranda v. Arizona, 384 U.S. 436 at 457, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1969). Compare the circumstances in Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), with Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). In applying these considerations a case by

case examination for all of the compulsive factors of *Miranda* must be made. United States v. Montos, 421 F.2d 215 (5th Cir., 1970). Whether an individual has the physical freedom to break off an interview or refuse to answer any further questions is but one factor to be considered in determining whether the interrogation was custodial.

These considerations demonstrate the wisdom of the IRS News Release IR–949 (1969 CCH Fed.Tax Rptr. ¶ 69–46) which accedes to the Seventh Circuit's requirement of *Miranda* warnings in tax fraud cases. See United States v. Dickerson, 413 F.2d 1111 (7th Cir., 1969). Consequently, any holding in a case such as Bland's is of limited precedential value.