(96 South. 49)

No. 23775.

SMITH v. ALBRITTON.

(Feb. 26, 1923. On Application for Rehearing, April 2, 1923.)

(Syllabus by Editorial Staff.)

1. Public lands ⬤⟿59—Land covered by lake and bayou in 1832 presumed still swamp land in 1849 and 1850.

Where government survey made in 1832 showed land was largely covered by nonnavi-gable lake and bayou, the presumption is that it was yet swamp land subject to overflow and unfit for cultivation at time of swamp land grants of 1849 and 1850.

2. Public lands ⬤⟿209—Conveyance to state under swamp land grants after time for suit to establish Spanish grants would have conveyed good title.

Under Act Cong. May 26, 1824, and Act June 17, 1844, providing for confirmation of Spanish grants, where time allowed had elapsed without confirmation, patent to state under swamp land grants of 1849 and 1850 prior to Act Cong. June 22, 1860, would have conveyed a valid title.

3. Public lands ⬤⟿60—Swamp lands did not vest in state without selection, examination, listing, and approval.

Under the swamp land grants by Act Cong. March 2, 1849, and Act Cong. Sept. 28, 1850 (U. S. Comp. St. §§ 4958–4960), title did not vest in the state by mere operation of the grants without selection by the state, and examination, listing, and approval by the Interior Department.

4. Public lands ⬤⟿211—Patent upon confirmation of Spanish grants under statutes passed before title conveyed under swamp land grants gave good title.

Where swamp lands were not conveyed to state under swamp land grants, Congress could give those claiming under a Spanish grant another chance to have their title confirmed, as was done by Act Cong. June 22, 1860, and Act June 10, 1872, and patent thereunder conveyed a valid title.

On Application for Rehearing.

5. Real actions ⬤⟿8(4)—Petitory action; no damages recoverable when slander suit converted into petitory action.

Where suits for slander of title were converted into petitory actions by answers asserting title in defendant, damages could not be recovered.

Appeal from Twelfth Judicial District Court, Parish of De Soto; John H. Boone, Judge.

Four actions by C. W. Smith, Barney Y. Wemple, Florien Giauque, and the Frost-Johnson Lumber Company, against Alvin R. Albritton. From a judgment for plaintiff in each case, defendant appeals. Judgments in the first two actions amended and affirmed on

rehearing, and judgments in the other two actions affirmed.

Cross & Moyse, of Baton Rouge, for appellant.

Lee & Bell, of Mansfield, for appellees.

O'NIELL, C. J. Two of these cases, Smith v. Albritton and Wemple v. Albritton, were originally actions for slander of the title of lands occupied by Smith and Wemple, respectively. The two other cases, Giauque v. Albritton and Frost-Johnson Lumber Co. v. Albritton, were brought to test the title to lands claimed by the plaintiffs, respectively, and by the defendant, but not occupied or possessed by either party. Such suits are authorized by the Act 38 of 1908. In answer to the suits of Smith and Wemple, the defendant asserted title to the land, converting each suit into a petitory action. The four cases were consolidated and tried as one case, the issues in all of them being substantially alike. There was judgment recognizing the plaintiff to be the owner of the land, in each case, and the defendant, Albritton, has appealed.

[1] He holds a patent from the state, for the land in contest in each case, claiming that the state acquired title by virtue of the swamp land grant of March 2, 1849. The lands were never approved to the state, or certified or selected for approval, under the swamp land grant. A government survey, however, made in 1832, shows that the land was then, for the most part, covered by a nonnavigable lake and bayou; and the presumption is that it was yet swamp land, subject to overflow and unfit for cultivation, at the time of the swamp land grants of 1849 and 1850.

Each of the plaintiffs holds a title, through mesne conveyances, from the heirs of Pierre Dolet, claiming title under a Spanish grant made in 1796.

On the 7th of December, 1795, Pierre Dolet petitioned the Spanish commandant, Don Bernardo Fernandez, for a grant of a square of land containing four (Spanish) leagues (4,-428.4 acres each), with Dolet's residence marking the center of the square. He alleged in his petition that he had built his residence on the land, had occupied and cultivated it for many years, and had raised herds of horses and cattle there. Under orders from the commandant, the procurador de esta comun investigated the boundaries of the tract, made sure that Dolet's possession was exclusive, went through quite a ceremony in giving Dolet actual possession, and then made and placed on record a written report of all he had done. The report or procès verbal was approved by the commandant, who issued his certificate confirming the grant, on the 14th of January, 1796. See Am. State Papers, vol. 4, p. 51. The four leagues square, embracing the land now in contest, was in territory which, although it had been ceded to the United States, remained under the dominion of Spain until 1819. This then-called "Neutral Ground" was east of the Sabine river and west of the Arroyo Hondo, the Kisachey, and the Calcasieu. The Spanish grants that were made in that "No Man's Land" after the cession of Louisiana to the United States, and before this government got control, have been, as a rule, recognized and confirmed as valid grants. The claim of the heirs of Pierre Dolet was recommended for confirmation in a report of the commissioners dated January 31, 1825, pursuant to the Acts of Congress of March 3, 1823 (3 Stat. 756), and May 26, 1824 (4 Stat. 52). See American State Papers, vol. 4, p. 51. Pierre Dolet had died in 1822, and his widow, Marie Rose Dupre Dolet, died in 1836. The grant had not yet been confirmed. The Dolet heirs continued to urge their claim before the Congress, from time to time, for many years. In the meantime, the Congress had enacted the several relief statutes, particularly the Act of May 26, 1824 (4 Stat. at L. 52), the Act of

June 17, 1844 (5 Stat. at L. 676), extending or renewing the provisions of the act of 1824, the Act of June 22, 1860 (12 Stat. at L. 85), and the Act of June 10, 1872 (17 Stat. 378), extending or renewing the provisions of the Act of 1860; each one of which acts afforded a method by which incomplete grants from the French or Spanish government might be presented, established, and confirmed, either by the act of Congress or by judicial decree.

In May, 1874, the grandchildren of Pierre Dolet, being his only heirs at law and the only heirs of his deceased widow in community, brought suit against the United States to have the Dolet grant confirmed, according to the provisions of the Act of June 10, 1872. The United States District Court gave judgment in favor of the plaintiffs, confirming the grant, ordering a survey of the land, and directing that a patent for it should issue to the plaintiffs. On appeal by the government, the Supreme Court of the United States affirmed the judgment for four Spanish leagues, 17,713.6 acres, instead of the .four American or English leagues, 23,040 acres, for which the District Court had given judgment. See United States v. Evelina Perot et al., 98 U. S. 428, 25 L. Ed. 251. Pursuant to the court's decree, the land was surveyed by a deputy United States surveyor commissioned for the purpose; an official plat of the survey was put on record; and a patent for the land, dated the 25th of February, 1884, with a copy of the judicial decree and of the plat of survey annexed to it, was issued to the Dolet heirs, named in the petition in the suit. All of the land now in contest is embraced within the area covered by the patent that was issued to the Dolet heirs, as shown by the map annexed to the patent.

In opposition to what appears to be a perfect title in the appellees in these suits, the appellant makes this argument: That the swamp land grants of 1849 and 1850 were grants in præsenti of all swamp lands, sub-ject to overflow and not fit for cultivation, "not claimed or held by individuals"; and that the Pierre Dolet grant was "not claimed" by his heirs when the swamp land grants were enacted, because the Dolet heirs had not availed themselves of the provisions of the Act of May 26, 1824, within the time allowed by the Act of June 17, 1844, renewing or extending the act of 1824.

For the purpose of this decision, we assume that the .time within which the Dolet heirs might have brought suit under the Act of June 17, 1844, had expired in March, 1849; concerning which, however, the language of the statute leaves some doubt. The question, then, is whether the land that had been granted by the Spanish authorities to Pierre Dolet was "not claimed" by his heirs when the swamp land grants of 1849 and 1850 were enacted.

[2] By the terms of the statutes of 1824 and 1844, all claims under incomplete Spanish or French land grants that were not asserted in the manner and within the time allowed by the statutes were to be ignored by the Land Department of the government of the United States, and the government was thereafter free to dispose of the lands, covered by such incomplete grants, as the proper department might see fit. Therefore, if the land embraced within the Dolet grant had been approved to the state, under the provisions of the swamp land grants, before the enactment of the Act of June 22, 1860, for the adjustment and recognition of private land claims like that of the Dolet heirs, a patent to the state, under the swamp land grants, would have conveyed a valid title. See Brott v. New Orleans Land Co., 151 La. 134, 91 South. 653, and the decisions there cited.

[3] But the land department of the United States government did not convey this land to the state, when it might have been so conveyed; and the Acts of March 2, 1849 (9

Stat. 352), and of September 28, 1850 (U. S. Comp. St. §§ 4958–4960), did not have the effect of a conveyance. The statutes are very explicit in that respect. The second section of the act of 1849 declares that, when the Governor of Louisiana shall have advised the Secretary of the Interior that the state has prepared to defray the expense of an examination of the swamp lands subject to overflow and unfit for cultivation, the Secretary shall cause the examination to be made under the direction of the Surveyor General, by experienced and faithful deputies, and a list of the lands shall be made out and certified by the deputies and the surveyor general to the Secretary of the Interior, who shall approve the same, "so far as they are not claimed or held by individuals; and *on that approval, the fee simple to said lands shall vest in the said state of Louisiana*, subject to the disposal of the Legislature thereof."

It is plain, therefore, that the fee simple to the swamp lands of the United States did not vest in the state of Louisana by mere operation of the swamp land grants, without a selection by the state, and an examination, listing and approval by the Interior Department. The swamp land grants have been declared grants in præsenti, only in this sense, that the subsequent selection, listing and approval of the lands to the state has the retroactive effect of conveying title as of the date of the statute.

We quote from Rogers Locomotive & Machine Works v. American Emigrant Co., 164 U. S. 570, 17 Sup. Ct. 191, 41 L. Ed. 557, using italics and quotations as they are in the text, viz.:

"But it is equally true that the act of 1850 made it the duty of the Secretary of the Interior, as soon as practicable after the passage of the act, to make out an accurate list and plats of the swamp and overflowed lands granted to any state and transmit them to the executive of such state, 'and, at the request of said Governor, cause a patent to be issued to the

153 LA.—17

state therefor; and *on that patent*, the fee simple to said lands shall vest in said state,' subject to the disposal of its legislature. While, therefore, as held in many cases, the act of 1850 was *in præsenti*, and gave an inchoate title, the lands needed to be identified as lands that passed under the act; which being done, and not before, the title became perfect as of the date of the granting act. *Wright v. Roseberry*, 121 U. S. 488, 494 [30:1039, 1040] *et seq.; Tubbs v. Wilhoit*, 138 U. S. 134, 137 [34:887, 888]; *Chandler v. Calumet & H. Min. Co.*, 149 U. S. 79, 91 [37:657, 661]. So, in *Ehrhardt v. Hogaboom*, 115 U. S. 67, 68 [29:346]; 'In *French v. Fyan*, 93 U. S. 169 [23:812], this court decided that, by the second section of the swamp land act, the power and the duty devolved upon the Secretary of the Interior, as the head of the department which administered the affairs of the public lands, of determining what lands were of the description granted by that act, and made his office the tribunal whose decision on that subject was to be controlling.' The identification of lands as lands embraced by the swamp land act was therefore necessary before the state could claim a patent or exercise absolute control of them."

That decision was quoted at length and with approval in Little v. Williams, 231 U. S. 339, 34 Sup. Ct. 70, 58 L. Ed. 259; where, after repeating the necessity for the identification, listing and approval of the swamp lands by the Interior Department, it was said, of the land then in contest:

"As this land was never so identified, and, so far as appears, its identification was never even requested by the State, it follows that, even if at the date of the act the land was in fact swamp or overflowed, the state never acquired more than an inchoate title to it, a claim which was imperfect both at law and in equity."

The most pertinent decision of the Supreme Court of the United States on this subject was rendered in the case of Public Schools v. Walker, 9 Wall. 282, 19 L. Ed. 576; which we quoted at length in State v. Bowie Lumber Co., 148 La. 598, 87 South. 308. We quote now from the opinion in the latter case, viz.:

"Counsel for plaintiff contend that Gov, Roman's failure to present his claim to the register and receiver of the land office for

registry and approval within two years after the passage of the act of Congress approved February 6, 1835 (4 Stat. 749), was an abandonment or forfeiture of his claim. We do not think so. A situation somewhat similar was presented in the case of Public Schools v. Walker, 9 Wall. 282, 19 L. Ed. 576. In that case there had been reserved to certain towns and villages in the state of Missouri by the act of Congress of June 13, 1812 (2 Stat. 748), certain lands 'then not rightfully owned or claimed by any private individual.' The school board sued for a tract of land occupied by the defendant, claiming title from Joseph Brazeau, who had claimed the land prior to the passage of the act of 1812. Brazeau had made application to the commissioners for confirmation of his title, but it had been rejected. Another commission was organized in 1832, which reported favorably on Brazeau's claim, and Congress, by act approved July 4, 1836, confirmed the claim. It was contended on behalf of the school board that Brazeau should have sued for confirmation of his claim under the act of 1824. In answer to the argument, the Supreme Court conceded that Brazeau had no claim that could be legally asserted between the time of the passage of the act of 1824 and the time of the passage of the act of 1832 organizing the new board of commissioners. But the court held that Brazeau's failure to avail himself of the provisions of the act of 1824 was not a denial that the land 'was rightfully claimed' by him. We quote from 76 U. S. (9 Wall.) 288, 19 L. Ed. 576, viz.:

" 'We must inquire whether the fact that Brazeau had failed to assert his claim within the time limited by Congress proved that his claim was not rightful. For, as a board of commissioners has said that it was rightful, and as Congress has also said it was, this proposition can only be refuted by holding that his failure to assert it for a time, and the declaration of Congress that he could not be heard to assert it afterwards, proved that it was not rightful.

" 'We do not think it had this effect. If it be treated as a statute of limitation, it is not the doctrine on which such statutes are founded that lapse of time proves the wrongfulness of the claim. They are made for the repose of society and the protection of those who may in that time have lost their means of defense. It is a mere declaration of the lawmaking power to the plaintiff that, having voluntarily slept so long upon his rights, he shall not now be permitted to assert them, to the injury of individuals and the disturbance of society.

" 'In the class of cases before us the act was nothing more than the declaration of the sovereign power, who at the same time held the fee of the land, that if you establish your equitable claim to the land, within a certain time, I will confer the title; if you do not, I will not afterwards hear you assert it. But it was competent for the sovereign, after this forfeiture had occurred by laches, to release it, to consent to hear the claimant, and to give him another chance to prove the rightfulness of his claim. And this is what Congress did by the act of 1832.' "

[4] Our conclusion is that the lands embraced in the Pierre Dolet grant remained under the control of the Land Department of the government of the United States after the enactment of the swamp land grants, and that the rights which the state acquired by virtue of those grants did not interfere with the right of the Congress to give to the heirs of Pierre Dolet another chance to have their title confirmed, as was done by the Act of June 22, 1860, and again by the Act of June 10, 1872.

With regard to appellant's patent for the land that was occupied and cultivated by the plaintiff Smith, and for that which was occupied and cultivated by Wemple, the case is plainly within the ruling made in Albritton v. Shaw, 148 La. 427, 87 South. 32. The patents, held by Albritton in the two cases, were issued in 1917 and 1920, respectively, in violation of the Act 21 of 1886, and without compliance with any of the requirements of the Act 215 of 1908. We rest our decision of these four cases, however, upon the conclusion which is common to all of them and decisive of all of them; that is, that the patent that was issued to the heirs of Pierre Dolet, of date the 25th of February, 1884, conveyed a valid title.

The judgments appealed from are affirmed, at appellant's cost.

On Application for Rehearing.

PER CURIAM. [5] Appellant has called our attention to the fact that, in each of the suits for slander of title, that is, in Smith v.

Albritton and in Wemple v. Albritton, the district court gave judgment for $250 damages. Damages are not allowed in such cases when the defendant, by his answer, has converted the suit into a petitory action.

In other respects, the decree affirming the four judgments appealed from is correct; and appellant's application for a rehearing will therefore be refused. For procuring an amendment of two of the judgments, however, he should be relieved of the costs of the appeal.

The judgment in each suit for slander of title, that is, in Smith v. Albritton and Wemple v. Albritton, is amended by rejecting the allowance of $250 damages; and, as amended, the judgments in these cases are, as are the two other judgments appealed from, affirmed. The plaintiffs, Smith and Wemple, are to pay the costs of this appeal. The application for rehearing is denied.