# UNITED STATES OF AMERICA, Plaintiff,
## v.
# CARL D. BENJAMIN, Defendant

[816 F. Supp. 373]

## Crim. No. 90-172

## District Court of the Virgin Islands

## Div. of St. Croix

## March 11, 1993

OFFICE OF THE UNITED STATES ATTORNEY (MICHAEL HUMPHREYS, ESQ.), Christiansted, St. Croix, V.I., *for the Government*

THOMAS E. HART, III, ESQ. (ALKON, RHEA & HART), Christiansted, St. Croix, V.I., *for the defendant*

BROTMAN, *Judge*

## MEMORANDUM OPINION

Before the Court are two motions to dismiss the prosecution of this action filed by both parties. The Government requests that the action be dismissed without prejudice, the defendant moves the Court to dismiss the action with prejudice. For reasons stated below Defendant's motion is Granted.

On December 18, 1990, the Defendant Carl Dupert Benjamin was charged in a two-count indictment with witness tampering. The Indictment alleges that Benjamin did "corruptly attempt to persuade another person, (Gavin Harris in Count I and Oliver Hanley in Count II) by offering a bribe with the intent to influence the testimony of that person in an official proceeding conducted in the District Court of the Virgin Islands, all in violation of Title 18 U.S.C. § 1512 (b)(1)." The indictment stated that the alleged conduct took place between January 1, 1987 and July 28, 1987.

Defendant Carl Dupert Benjamin seeks to dismiss the indictment with prejudice because the conduct charged thereunder did not, at the time, constitute an offense under 18 U.S.C. § 1512 (1988). Benjamin argues that since the present indictment is and always has been a nullity, a new indictment cannot relate back to the first indictment. Defendant Benjamin also urges dismissal pursuant to

Rule 48(b) of the Federal Rules of Criminal Procedure, because of pre-indictment and post-indictment delays in the prosecution of this case.

The Government concedes that the conduct alleged in the indictment "fell outside the prohibitions of section 1512," in that the pending "indictment charges the defendant with conduct that was not unlawful until 1988." The Government also concedes that the limitation period for prosecution of this offense as charged has run, but argues that "the Government may still properly charge the defendant pursuant to the terms of title 18 U.S.C. § 3288."[1] See Government's Motion for Dismissal, p.2. The Government contends that the pending Indictment is "otherwise meritorious" though technically flawed. The Government argues, that the Indictment should be dismissed without prejudice because the very purpose of 18 U.S.C. § 3288 is to permit the Government, by filing a new indictment, "to accommodate legal deficiencies in Indictments such as [this]." See Government's Supplemental Memorandum in Support of its Motion To Dismiss, [hereinafter "Government's Supplemental Motion], p. 9. Moreover, the Government contends dismissal without prejudice is required "to give effect to the underlying policy of 18 U.S.C. § 3288 which mandates that an allegedly guilty person will not escape conviction simply because of a technical error of law." Government's Supplemental Motion, p. 10. Finally, the Government argues that defendant's argument for dismissal pursuant to Rule 48(b) because of the overall delay in the investigation and prosecution of this case is wholly irrelevant and without merit. The Government contends that "under well-settled case law, dismissal under Rule 48(b) can be justified only because of post-arrest delays."

---

[1] Title 18 U.S.C. § 3288 reads in relevant part:

Indictment where defect found after period of limitations.

Whenever an indictment is dismissed for any error, defect, or irregularity with respect to the Grand Jury, or an indictment . . . is found otherwise defective or insufficient for any cause, after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the dismissal of the indictment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Though the facts of this case are not in issue, a brief chronology of the events leading to the filing of these competing motions to dismiss is necessary to the Court's analysis. The activity alleged in the Indictment took place between January 1, 1987 and July 28, 1987, while Defendant was working on the investigation in a civil case with a local attorney. On August 8, 1987, the opposing attorney in the civil case reported the alleged bribery to the local United States Attorney's office, and forwarded transcripts of statements by witnesses dated July 28, 1987 which allegedly substantiated the witness tampering charge. Benjamin was not interviewed with respect to the allegations until March 3, 1988, more than seven months later. At the time of the interview, Benjamin alleges he informed the FBI Agent conducting the interview that there were tape recordings of his conversations with the witnesses in the possession of the attorney for whom he had done the investigation. The attorney for whom Benjamin worked was also interviewed in February or March of 1988, and at that time informed the investigators that tapes of the Defendant's conversation with the witnesses were then available. The Government never asked to examine these tapes, and thus the tapes were never made part of the investigation of this matter.

The next event in the investigation of this matter did not occur until some 18 months later when one of the targets of the alleged bribe, Gavin Harris, was interviewed on September 6, 1989. Another three months passed before the second complaining witness, Oliver Hanley, was interviewed. The issue was not presented to the Grand Jury until December 1990, more than three (3) years after the last date of the alleged offense. In the interim, Hurricane Hugo struck St. Croix and the audio tapes of Benjamin's conversations with the alleged victims and other witnesses were among the records destroyed. Though the Indictment returned in December of 1990 was not a sealed Indictment, another 18 months passed before the Defendant was served with the Indictment and arrested on August 12, 1992. It is to be noted that the statute of limitations on this crime had expired on July 28, 1992, approximately two weeks before the Defendant was arrested.

Defendant's trial was scheduled for October 21, 1992, the seventieth day of his arrest, the last day his trial could have commenced under the Speedy Trial Act of 1974. On the day of trial a pre-trial

conference was held in the trial Judge's chambers. At that hearing, which was in camera, both the defense attorney and the attorney for the prosecution presented competing motions to dismiss based upon a defect in the Indictment. The defect pertained to the fact that the Defendant was charged under a statute that did not make Benjamin's alleged conduct a criminal offense until 1988. Since the last date of the alleged misconduct was in July of 1987, the pending Indictment against Defendant constituted an unconstitutional ex post facto application of the statute. Counsel for defendant urged dismissal with prejudice; the prosecution sought a dismissal without prejudice.[2] A hearing on the competing motions to dismiss was had later that day, on October 21, 1992.

With respect to its motion to dismiss the Government offers no explanation for the delay in bringing this defendant to trial. The Government does allege, though not strenuously, that the defendant attempted to evade service of the Indictment. The Government "theorizes that the defendant's intermittent travels to St. Croix were stealth-like and calculated to avoid apprehension by the authorities."[3] In the words of the Government "[its] proof on this matter (evasion of service) is, at the present time tenuous." Id.

Benjamin, on the other hand, contends that he first became aware of the Indictment when he was arrested. Defendant avers that he is a permanent resident alien, a native of Antigua, and self-employed as a marine mechanic. He states that he is the owner of a house in Estate Humbug, St. Croix, and that he resides with his wife and child in Castle Coakley, St. Croix, and he was the owner of a 1988 Toyota Corolla which was required to be registered and has been registered in his name on St. Croix from 1988 through 1992. He represented that because of his expertise as a marine mechanic his work requires travel between Antigua, Tortolla, St. John, St. Thomas and St. Croix. Benjamin states that his travels to and from St. Croix have always been by means of "public transportation or common carrier," and that he was required to present himself to the United States Department of Justice, Immigration and Customs authorities. Moreover, Defendant avers that in February 1992, he lost his Alien Registration Card and that he presented himself to

---

[2] The Prosecution now claims it may re-indict pursuant to Title 18 U.S.C. § 201 which prohibits bribery of public officials and witnesses.

[3] Government's Supplemental Motion, p.11, n.4.

the Department of Justice, Immigration and Naturalization Division in order to obtain a replacement card. Benjamin maintains that it is inexplicable and indefensible that in the 18 months since the Indictment was returned by the Grand Jury he was never advised of nor served with the Indictment.

## III. DISCUSSION

The Court begins its analysis by stating at the outset that the pending Indictment which charges a violation of 18 U.S.C. § 1512 is dismissed, on the ground that it violates the ex post facto clause of the United States Constitution. The remaining issue is whether the dismissal should be with or without prejudice.

■ The Government, in urging that the Indictment be dismissed without prejudice, would have this Court focus its inquiry on the Government's statutory right to return a new indictment pursuant to 18 U.S.C. § 3288, within six months of dismissal when the statute of limitations has run.[4] The defense, on the other hand,

---

[4] First, the Court seriously questions the underlying premise of the Government's argument that a facially unconstitutional indictment tolls the statute of limitations.

The Indictment is being dismissed, in the first instance, because it constitutes a violation of the ex post facto clause of the United States Constitution, in that it was returned for conduct not proscribed under the statute at the time. In this Court's judgment, it is just as though an indictment had never been returned, as the conduct did not, at the time, constitute a crime under the statute.

Second, as to the merits of this argument, the Government's emphasis is misplaced. Though the very purpose of section 3288 has been expressed as "[a]llowing a second indictment to remedy deficiencies present in the first," United States v. Charnay, 537 F.2d 341 (9th Cir.), cert. denied, 97 S. Ct. 527 (1976), here, the deficiency is no mere technicality, scrivener error or "corrigible mistake." Id. at 355, (citation omitted).

The cases the Government relies upon are factually and procedurally distinguishable. The Court will not engage in a discussion of each and every one of these distinctions, but need only say that in none of those cases was the indictment dismissed as insufficient in law because the indictment constituted an ex post facto application of the law. The sufficiency of the Indictment to charge an offense under a validly applied statute is not being challenged here, as in the majority of the cases the Government relies upon. Though the Government now contends that it may re-indict pursuant to 18 U.S.C. § 201(b) (3), there is a total lack of evidence in the record of an *intent* to indict under any other statute. A final note, in all the cases cited by the Government, unlike here, the accused had notice of the indictment or information prior to the running of the statute of limitations on the offense.

141

argues that dismissal should be with prejudice because (1) the defect in this indictment is no mere technical error that would make dismissal without prejudice appropriate; (2) that the defendant has been prejudiced both by the delay in prosecution between the alleged commission of the offense and the bringing of the indictment, and by the post-indictment delay; and (3) that the delay, both pre- and post-indictment, violates Rule 48(b) of the Federal Rules of Criminal Procedure.

The Court will now address the issue of whether dismissal should be with or without prejudice, independent of the question of the Government's entitlement to re-indict pursuant to 18 U.S.C. § 3288.

1. Dismissal pursuant to Rule 48.

■ The Government contends that the defense position with respect to dismissal under Rule 48(b), Fed. R. Crim. P., because of the overall delay in bringing this defendant to trial is irrelevant and wholly without merit, since "under well-settled case law, dismissal under Rule 48 (b) can be justified only because of post-arrest delays." See Government's Supplemental Motion p. 11 (citations omitted). The Government is correct in this assertion, for in United States v. Marion,[5] the Supreme Court stated that Rule 48(b), Fed. R. Crim. P., which permits district courts to dismiss indictments due to pre-indictment and post-indictment delay, is "limited to post-arrest situations." See, 404 U.S. at 319, 92 S.Ct. at 462, re-aff'd, United States v. Lovasco, 431 U.S. 783, 789, n.8, 97 S.Ct. 2044, 2048, n.8, 52 L. Ed. 2d. 752 (1977). Since no post-arrest delay is present in this case, there is no ground for dismissal pursuant to Rule 48(b).

However, the inquiry does not end there. Benjamin's Rule 48(b) claim that he was prejudiced by delay between the commission of the alleged crime and indictment encompasses a claim on constitutional grounds, in that under certain circumstances, the Due Process Clause of the Fifth Amendment requires dismissal of an indictment brought within the statute of limitations. See, Marion, 404 U.S. 307 (1971) (where the Supreme Court determined that pre-prosecution or pre-indictment delay is protected primarily by statutes of limitation and the Fifth Amendment Due Process Clause).

---

[5] 404 U.S. 307, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971).

In addition, Benjamin also makes out a claim for violation of his Sixth Amendment guarantee "to a speedy trial." The Court will consider these claims seriatim.

A. *Pre-Indictment Delay*

■■ Generally, the limit on pre-indictment delay is set by the statute of limitations. In this case the limitation period, as established by 18 U.S.C. § 3282 is five years, and prosecution of the defendant would have been barred if there had been no indictment within five years after the alleged offense was committed. The Court assumes, for purposes of this part of its analysis only that the Indictment returned in December 1990, though a nullity, was sufficient to toll the statute of limitation. However, "though statutes of limitations provide the primary guarantee against bringing overly stale criminal charges,. . . the statute of limitations does not fully define a defendant's rights with respect to events occurring prior to indictment." Marion, 404 U.S. at 322 & 324. In Marion, the Supreme Court stated that the Due Process Clause of the Fifth Amendment affords limited protection against pre-indictment delay, and would require dismissal if it were shown that the pre-indictment delay: (1) caused substantial prejudice to the defendant's right to a fair trial; and (2) that the delay was an intentional device to gain tactical advantage over the accused. See, Marion, 404 U.S. at 324.

■ The test for determining a Fifth Amendment Due Process violation was clarified by the Supreme Court in United States v. Lovasco, 431 U.S. 783, 792, 97 S.Ct. 2044, 2049, 52 L.Ed. 2d 752 (1977). In making the Due Process inquiry, Lovasco requires courts (1) to determine whether the defendant has suffered actual substantial prejudice due to pre-indictment delay; and (2) to consider the Government's reasons for the delay and whether the length of the delay, when balanced against the reasons for the delay, "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions." Lovasco, 431 U.S. at 789.

■ Both prongs of the Lovasco test involve a double inquiry. In applying the first part of this two-part test, the court must determine whether the defendant has proved actual prejudice, and whether the prejudice is substantial, that is, the prejudice to the defense must meaningfully impair the accused's ability to defend himself. Defendant's various contentions demonstrate that the three years, five months delay before the return of the Indictment prejudiced him in the following ways:

143

1. diminution of the memories of all witnesses; and
2. the loss of physical, exculpatory evidence, that is, the destruction of the audio tapes of his interviews with witnesses and the alleged victims.

 It is beyond question that "possible prejudice is inherent in any delay," See Marion, 404 U.S. at 322, 324. But not "every delay-caused detriment [operates to] abort a criminal prosecution." Id. at 342-325. However, as the Supreme Court has oft noted "unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including 'oppressive pretrial incarceration,' 'anxiety and concern of the accused, 'and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." Doggett v. United States, 112 S.Ct. 2686, 2692 (1992) (citing prior Supreme Court cases). The last form of prejudice has been identified as "the most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Doggett, 112 S.Ct. at 2692. Here, the defendant claims this most serious kind of prejudice.

Benjamin contends, and the Government does not refute the contention, that tapes of his interviews with the alleged victims and other witnesses were available, from the Attorney with whom he had worked, at the time the investigation was progressing. The attorney in question, when interviewed, also informed the FBI Investigator that the tapes were available. Defendant contends that the tapes, which were recordings of his interviews with the witnesses in the civil case, would have countered the allegations against him made by the alleged victims and/or witnesses. These tapes were never examined by the Government, and thus were never made part of the evidence in this matter. Benjamin appears to argue that had the Government been more diligent in its investigation of the matter he would have sought to preserve the tapes for his defense. The tapes were among thousands of records and documents destroyed during Hurricane Hugo which struck and devastated the jurisdiction on September 17, 1989.

It is clear from the record that the Government's conduct in its investigation of this case may be viewed as negligent and lackadaisical. The record before the Court shows that the Government had knowledge of the alleged incidents of witness tampering on August 8, 1987, more than two years before Hugo struck. The rec-

ord also strongly suggests that the Government had obtained the bulk of the evidence it would acquire to establish Benjamin's guilt the moment the allegations were made and it received the witnesses's statements on August 8, 1987. After receiving the reports of the alleged bribery solicitation, the Government waited over seven months to interview the accused. At that time the Government was informed of the existence of audio tapes of Benjamin's interviews with his accusers and other witnesses, but did not seek to examine them. More than eighteen (18) months would pass before the first of the alleged victims was interviewed. Another fourteen (14) months lapsed before the defective Indictment was returned on December 20, 1990, more than three (3) years after the last date the offenses were allegedly committed and the Government first received notice of their commission. Benjamin contends that his defense has been severely impaired. He argues that the impairment to his defense is due primarily to the negligent and dilatory manner in which the investigation of his case was conducted. The crux of his argument is had the Government returned the Indictment earlier, he would have preserved the evidence on the tapes which were subsequently destroyed during Hurricane Hugo. In addition, Benjamin suggests that the Government, knowing of the existence of the tapes, further harmed his defense by never seeking to examine the tapes.

The Government offers no explanation for the protracted manner in which this case was processed, and makes no effort to explain the inordinate delay in bringing the Indictment. In fact, the Government's position is that it was under no legal requirement, "statutory, common-law or Constitution[al]" to complete its investigation in a diligent manner that would minimize delay. The Government's argument overlooks the Constitution's guarantee of a fair trial as protected by the Fifth Amendment's Due Process Clause.

██ ██ Thus, while it is true that "prosecutors are under no duty to file charges as soon as probable cause exists [or] before they are satisfied that they will be able to establish the suspect's guilt beyond a reasonable doubt," Lovasco, 97 S.Ct. 2049, the Due Process Clause provides some "protect[ion] against oppressive delay," in the bringing of charges. Id. at 2048. And though this protection is limited, the Lovasco Court indicated that dismissal would be compelled in those cases where the defendant could demonstrate ac-

tual prejudice and prove bad-faith delay by the prosecution, as in the deliberate delay of prosecution to gain some impermissible advantage at trial.

Here, the Defendant has demonstrated actual prejudice that impairs his ability to defend the charges against him. The Defendant has made an affirmative showing that the pre-indictment delay "weakened his ability to raise specific defenses, elicit specific testimony, [and] produce specific items of evidence." See, Doggett, 112 S.Ct. 2592. As was stated earlier, a finding of actual prejudice that substantially impairs the defense, by itself, does not justify dismissal of an indictment under a Due Process inquiry. Courts are also required to "consider the reasons for the delay as well as the prejudice to the accused." Lovasco, 97 S.Ct. at 2049.

In this case, though the defense alleges that the delay is unreasonable, and that it was in the first instance intentional, and in the second, grossly negligent, it is not clearly alleged that the delay was motivated by an impermissible attempt by the Government to impair the defendant's ability to present an effective defense. On the other hand, the Government does not attempt to justify the lengthy delay, or to make a representation as to the motivation for the delay, but simply states that the Defendant cannot prove bad-faith.

■ ■ However, in a recent decision, in a case analogous to the one at bar, a sharply divided Supreme Court departed from Lovasco's absolute requirement that the defendant prove deliberate misconduct on the part of the Government. In Doggett, the Supreme Court considered whether, absent a clear assertion of bad-faith and prejudice, the defendant's Sixth Amendment speedy trial right was violated by a post-indictment delay of over eight years. The majority concluded that "When the Government's negligence causes delay . . . sufficient to trigger judicial review, . . . and when the presumption of prejudice, . . . , is neither extenuated, . . . , nor persuasively rebutted, the defendant is entitled to relief. Doggett v. United States, 112 S.Ct. 2686 (1992). Justice Souter, writing for the majority in Doggett, reasoned as follows:

> Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupy the middle ground. While not compelling relief in every case where bad-faith delay would make relief automatic, neither is negligence

automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him.

Doggett, 112 S.Ct. at 2693. Here, unlike the accused in Doggett, even though he has yet to be tried, the Defendant has demonstrated substantial prejudice to his defense as a result of the pre-indictment delay. While the Government makes no attempt to justify the prolonged delay of the prosecution of this case, there is some evidence in the record that the delay was in part due to an attempt by the Government to amass and assess evidence against another potential defendant, the attorney in the civil case for whom the Defendant worked at the time he allegedly engaged in the conduct. The Government stands on its denial of any deliberate intent to harm Mr. Benjamin's defense, and takes the position that notwithstanding irreparable prejudice to the defense, absent proof of bad-faith on its part, dismissal with prejudice is improper. However, to accept the Government's position would be, as the Doggett majority observed, to "[c]ondone prolonged and unjustifiable delays in prosecution [which] would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecution priority." Doggett, 112 S.Ct. at 2693. Applying the analysis of the Supreme Court in Doggett, this Court concludes that, where as here actual prejudice is sufficiently proved and negligence has resulted in unreasonable delay not persuasively rebutted, Benjamin is entitled to relief.

█ However, because "courts are not free to abort criminal prosecution simply because they disagree with the prosecutor's determination as to the appropriate time for initiation of prosecution," See Lovasco, 431 U.S. at 790, and dismissal of the prosecution of cases on the basis of pre-indictment delay is looked upon with disapproval, this Court does not rest its decision in this matter solely on the Defendant's Due Process Claim. The facts of this case provide additional grounds for dismissal.

B. *Post-Indictment Delay*

█ █ The Government contends that there is no speedy trial rights violation because though Defendant's "trial was required to commence no later than October 21, 1992, . . . the seventieth day after his arrest, the filing of the motions [to dismiss] by both parties tolled the defendant's statutory rights to a speedy trial." The Gov-

147

ernment's contention is correct for purposes of the Speedy Trial Act of 1974 which requires that an indictment be dismissed if the defendant is not brought to trial within "seventy days from the filing of date of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, *whichever date last occurs*." 18 U.S.C. § 3161(c)(1) (emphasis added). However, compliance with the Speedy Trial Act does not in all cases preclude a claim of violation of the speedy trial guarantee of the Sixth Amendment of the Constitution. Indeed, a provision of the Speedy Trial Act itself recognizes the pre-eminence of the Sixth Amendment guarantee.[6] Thus, once again, the Government overlooks an equally well-established principle that applies in this case, and which states "[o]nce an individual has been indicted the Government has a constitutional duty to make a diligent good-faith effort to locate, apprehend and bring to trial the accused. See Smith v. Hooey, 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed. 2d. 607 (1969); Dickey v. Florida, 398 U.S. 30, 37–38, 90 S.Ct. 1564, 1569, 26 L.Ed. 2d 26 (1970) (the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial).

 The scope of the Sixth Amendment speedy trial protection was articulated in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), and requires a four-prong inquiry: (1) the length of delay; (2) the reason for the delay; (3) defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defense resulting from the delay. The Supreme Court in Barker observed that the factors do not have "talismanic qualities" but are related factors that must be considered by courts in a sensitive balancing process.

 The first Barker factor has been interpreted as requiring the length of delay to be "presumptively prejudicial" in order to trigger application of the other three factors. See United States v. Loud Hawk, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed 2d 640 (1986). Though the delay of 18 months between accusation and trial cannot be described as "extraordinary" as the five-year delay in Barker, it is of sufficient duration to create a presumption of prejudice. As the Su-

---

[6] See 18 U.S.C. § 3173: "No provision of this chapter shall be interpreted as a bar to any claim of denial of speedy trial as required by amendment VI of the Constitution."

preme Court noted in Barker, where the charge is serious and complex a greater length of delay can be tolerated, as opposed to an ordinary street crime where the delay that can be tolerated is considerably less. The charge in this case is more akin to an ordinary street crime in complexity and thus the Court finds, considering the totality of the circumstances, that the 18-month delay here is sufficient to trigger an inquiry into the other factors.

■ The second prong of the Barker test requires the Court to look to the reason for the delay. In applying this prong of the Barker test courts are directed to give different weights to different reasons. Evidence of a deliberate attempt to hamper the prosecution must be weighed heavily against the Government. A more neutral reason like institutional dysfunction (i.e., overcrowded docket) or neglect "should be weighed less heavily but nevertheless be considered the ultimate responsibility of the Government." Barker, 407 U.S. at 530.

■ Here, though there is an allegation of intentional delay by the Government, the record lacks evidence of impermissible conduct aimed at harming the defense. However, there is overwhelming evidence supporting a finding of gross negligence: Benjamin had a car registered in his name, recorded title to real property on St. Croix, and had travelled frequently (more than twice a year) to and from St. Croix subsequent to his Indictment without the Government seeking to apprehend him or to conduct a simple check as to his whereabouts. The neglect in processing this case which began in the pre-indictment period and persisted through the post-indictment period is indicative of either the relative low prosecutorial priority of this case or gross negligence. The egregious failure to prosecute Benjamin which resulted in prolonged and unjustifiable delays is to be weighed against the Government. See Doggett, 112 S.Ct at 2693.

■■ In determining whether a Sixth Amendment speedy trial claim has been established, the third of the Barker factors requires courts to look at the defendant's assertion of his speedy trial right. While a prompt assertion of the right is to be given greater weight, failure to make a demand for speedy trial will not automatically result in waiver of the right. See Barker, 407 U.S. at 528 ( "[w]e reject, . . . , the rule that a defendant who fails to demand a speedy trial forever waives his right."). Benjamin's contention that

he was unaware of the charges pending against him is largely substantiated and has not been rebutted persuasively by the Government. Thus, inasmuch as Benjamin was unaware of the indictment, his failure to invoke his speedy trial right prior to his arrest cannot be taxed against him. Moreover, even if the Court were to attribute to Benjamin some awareness of the possibility of charges, there is no duty upon a defendant to bring himself to trial—that duty lies with the Government. The Government failed in its duty "to move with the dispatch that is appropriate to assure [Benjamin] of an early and proper disposition of the charges against him." Marion, 404 U.S. at 313.

■■ The fourth and final of the Barker factors that must be considered is prejudice to the defense as a result of the delay. In this inquiry prejudice is to be assessed in light of the basic interests protected by the Sixth Amendment. Those interests have been identified as: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused and (iii) to limit the possibility that the defense will be impaired. See Smith v. Hooey, 393 U.S. at 377–378 (citing to United States v. Ewell, 383 U.S. 116, 120 (1966). In this case Benjamin's claim may rest only on the third of these identified interests, which as the Supreme Court has observed is "most serious . . . , because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Barker, 407 U.S. at 532. There has been no trial, therefore the Defendant cannot point to particularized prejudice; but in addition to his claim of lost evidence, he claims general prejudice due to the unnecessary post-indictment delay. The defense claims that delay has reduced the evidence in this case to primarily testimonial evidence (the defendant's word against his accusers), of witnesses attempting to recall what was said and in what context. That memories would be impaired is obvious, and the prejudice here to the defense, be it a result of lost tapes or the inaccurate recollection of events is not extenuated. The prejudice that is inherent in any delay is more than a possibility here—it is probable, if not actual.

■ The balancing of these factors presents no difficulty for this Court. The delay between indictment and arrest was found to be presumptively prejudicial. The Government has not advanced any reason to justify the delay. Moreover, because the record supports Benjamin's contention that he was unaware of the charges pending

against him, he will not be taxed with not making a demand for a speedy trial prior to arrest. Although there is no particularized trial prejudice the defendant can point to, the presumption of prejudice is not extenuated. See Doggett, 112 S.Ct. at 2686.

 The fact that the indictment which was returned makes an ex post facto application of the statutory offense is another circumstance appropriately considered when balancing the Barker factors and which will be taken into consideration in determining Benjamin's entitlement to relief. Had the Government made a diligent effort to prosecute this case, this facial error with respect to the Indictment would have been discovered before the statute of limitation had expired in this case. Notwithstanding the fact the Defendant was unaware of the charges pending against him, and that the Defendant was arrested on this illegal Indictment after the statute of limitation on the alleged offenses had run, the Government would have this Court say that the Indictment should be dismissed without prejudice.[7] In this Court's judgment to accept the Govern-

---

[7] As heretofore explained, the entire thrust of the Government's argument is that dismissal of the Indictment with prejudice would defeat the purpose behind the savings provision of 18 U.S.C. § 3288. However, a countervailing principle underlies criminal statutes of limitations. That principle states that "criminal statutes of limitations are to be liberally interpreted in favor of repose." Marion, 404 U.S. at 322, n.14, citing to States v. Habig, 390 U.S. 222, 227, 88 S. Ct. 926, 929, 19 L. Ed. 2d. 1055 (1968). There the Supreme Court then analogized to "polices behind civil statutes of limitation" which the Court determined are "in many ways similar." Marion, 404 U.S. at 322, n.14. In Marion, the Supreme Court paused to reiterate its prior expressions on statutes of limitations:

the applicable statute of limitations . . . is the primary guarantee against bringing overly stale criminal charges.' . . . They 'are made for repose of society and the protection of those who may [during the limitation] have lost their means of defense.' Public School v. Walker, 9 Wall 282, 288, 19 L. Ed. 576 (1870). These statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced.

Marion, 404 U.S. at 322. The Defendant in this case has argued convincingly his unawareness of the charges pending against him. The expiration of the statute of limitations on the offense before the Defendant was arrested [gives] him an irrebuttable presumption that his right to a fair trial has been prejudiced.

Moreover, because dismissal of the Indictment in this case is premised on grounds, independent of "error, defect, or irregularity with respect to the grand jury" or for any other reason stated in 18 U.S.C. § 3288, its savings

151

ment position would be to permit the Government to "violate[] those fundamental principles of justice which lie at the base of our civil and political institutions" . . . (citations omitted) "and which define the community's sense of fair play and justice." Lovasco, 431 U.S. at 791.

■■■ In dismissing this Indictment the Court does not merely rely on the accused's valid Fifth Amendment Due Process or Sixth Amendment speedy trial claims for pre and post Indictment delays. It is the combination of all the circumstances discussed above which motivates the Court's conclusion; that is, the pre and post indictment delay, prejudice to the defense due to the lost and unexamined tapes, prejudice due to failure of memory, the fact that the Indictment was a nullity and the expiration of the statute of limitations on the alleged offenses before the arrest of the defendant.

Accordingly, it is ordered that the Indictment against Carl Dupert Benjamin, Criminal No. 90-172, be dismissed with prejudice.

## ORDER

This matter having come before the Court on the competing and contemporaneously filed motions of the parties to dismiss the Indictment in this case: the Defendant praying for dismissal with prejudice, the Prosecution seeking dismissal without prejudice; and

In accordance with the Court's opinion filed on even date, it is ORDERED:

THAT the Indictment against Carl Dupert Benjamin, Criminal No. 90-172, be DISMISSED WITH PREJUDICE.

---

provision does not apply in this case. See U.S. v. Bortnovsky, 683 F. Supp. 449, 451 (S.D.N.Y. 1986) (relying on United States v. Peloquin, 810 F.2d 911 (9th Cir. 1987). This Court agrees with the reasoning of the Bortnovsky and Peloquin courts "that dismissal for failure to meet the Speedy Trial Act [or for Fifth and Sixth Amendments violations] is [not] dismissal because of a defect or insufficiency of the Indictment itself so as to invoke the savings provisions of 18 U.S.C. § 3288 . . . " Bortnovsky, 683 F. Supp. at 451.